UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 2:13-cv-219-WKW |
| CITY OF MILLBROOK, ALABAMA, | ) JURY TRIAL DEMANDED |
| Defendant. | ) |

# COMPLAINT

Plaintiff, the United States of America, alleges:

1. This action is brought on behalf of the United States to enforce Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII").

## JURISDICTION AND VENUE

2. This Court has jurisdiction of the action under 42 U.S.C. § 2000e-5(f) and 28 U.S.C. § 1345. Venue is proper in this judicial district under 42 U.S.C. § 2000e(5)(f)(3) and 28 U.S.C. § 1391(b) because it is where a substantial part of the events or omissions giving rise to the cause of action have occurred.

3. Defendant, the City of Millbrook, Alabama ("Millbrook" or "City"), is a governmental body created pursuant to the laws of the state of Alabama and located within this judicial district.

4. The City of Millbrook is a "person" within the meaning of 42 U.S.C. § 2000e(a) and an "employer" within the meaning of 42 U.S.C. § 2000e(b).

1

5. The United States Equal Employment Opportunity Commission ("EEOC") received a timely charge (Charge No. 420-2009-02864) filed by charging party Kristen Spraggins ("Spraggins") on or about July 23, 2009 and amended on or about September 30, 2009, alleging that she had been discriminated against on the basis of sex when she was subjected to sexual harassment by Sergeant Mike Speigner ("Speigner"), while employed as a Patrol Officer with the Millbrook Police Department ("MPD"), and subsequently terminated on the basis of her sex and in retaliation for her complaints to the MPD and the City about Speigner's behavior. Pursuant to Section 706 of Title VII, 42 U.S.C. § 2000e-5, the EEOC investigated the charge, found reasonable cause to believe that Spraggins' allegations of sexual harassment and retaliation were true, attempted unsuccessfully to achieve through conciliation a voluntary resolution of the charge, and subsequently referred the matter to the Department of Justice.

6. All conditions precedent to the filing of suit have been performed or have occurred.

## CAUSE OF ACTION

7. Spraggins was hired as a probationary patrol officer by the City of Millbrook on or about January 11, 2008. On or about July 10, 2008, Spraggins completed her probationary period, becoming a regular full-time patrol officer and receiving a two step raise in her pay. Her evaluation of this date stated, "Officer Spraggins is a gifted young officer who has shown flashes of what the future holds for her as she continues to gain experience."

8. During her employment, Spraggins was the only uniformed female police officer serving with the MPD.

2

9. During the course of her first year of employment with the MPD, Spraggins successfully completed undercover narcotics assignments in cooperation with local, state and federal law enforcement agencies. She was also chosen to serve on the MPD's Honor Guard and S.W.A.T. team.

10. In recognition of her excellent performance, Spraggins was assigned the first new Dodge Charger patrol cruiser obtained by the MPD.

11. For approximately three weeks in January 2009 until she voluntarily transferred to another shift, Sergeant Mike Speigner ("Sgt. Speigner") was Spraggins' direct supervisor on the first shift. Sgt. Speigner also served as Spraggins' supervisor when they both served on the MPD's S.W.A.T. team.

12. In late January 2009, while Spraggins was at her home, Sgt. Speigner approached her. At the time, Spraggins was outside attempting to install a cup holder into the newly-issued Dodge Charger. Sgt. Speigner showed Spraggins how to install the cup-holder, after which he suddenly embraced Spraggins and attempted to kiss her on the lips. Spraggins moved her face away and Sgt. Speigner instead kissed her neck and made growling noises. Spraggins eventually pushed Sgt. Speigner away and informed him that she was not interested in him.

13. Shortly after Sgt. Speigner's initial sexual advance, Spraggins informed her immediate supervisor, Sergeant Jason Gray ("Sgt. Jason Gray") of it. Spraggins informed Sgt. Jason Gray that she wanted him to be aware of the situation in case it deteriorated, but requested that he keep her report confidential.

14. In or about early February 2009, Sgt. Speigner began to stop by the gym patronized by Spraggins while she was there exercising. While pretending to show Spraggins

3

how to perform certain exercises, Sgt. Speigner again attempted to embrace and kiss her on one or more occasions. Spraggins rejected Speigner's advances.

15. Spraggins informed Sgt. Jason Gray of Sgt. Speigner's visits to the gym, and again asked him to treat her complaint as confidential.

16. In addition, Spraggins asked Officer Ken Gray ("Ken Gray"), brother of Sgt. Jason Gray, to come into the gym any time Ken Gray saw Sgt. Speigner's patrol cruiser parked there. Ken Gray did so. After Ken Gray discovered Sgt. Speigner on the premises several times, Sgt. Speigner stopped visiting Spraggins while she exercised at the gym.

17. Also in early February 2009, Spraggins was asked by MPD Chief Patrick K. Johnson ("Chief Johnson") to travel to Montgomery with Sgt. Speigner in order to attend a funeral of a Montgomery police officer killed in the line of duty. As they drove to Montgomery in Spraggins' car, Sgt. Speigner reached across the center consol and attempted to hold Spraggins' hand. When Spraggins again rebuffed him, Sgt. Speigner stated that since she had rejected him he "would need to figure something else out," or words to that effect.

18. Beginning in April 2009, after Spraggins firmly rejected his sexual advances, Sgt. Speigner began raising a series of complaints to Spraggins' supervisors about alleged misconduct and/or infractions of Department policy on her part. For example, Sgt. Speigner reported to Spraggins' supervisor that she arrived approximately five minutes late for a shift and out of uniform. He also reported several alleged faults in her maintenance of the Dodge Charger as well as other minor infractions.

19. Spraggins' supervisors became aware of friction between Spraggins and Sgt. Speigner through his repeated complaints about her. As a result, Spraggins' supervisors became hostile toward her and began treating her as if Sgt. Speigner's complaints were true. In one

4

instance in mid-April, Chief Johnson abruptly removed the Dodge Charger from Spraggins and reassigned it to Sgt. Speigner in a publicly humiliating manner.

20. On approximately April 23, 2009, Spraggins informed Sergeant Joe Capps ("Sgt. Capps") that the source of the friction between her and Sgt. Speigner was that Sgt. Speigner had made sexual advances toward her, and that Sgt. Speigner was retaliating against her for rejecting those advances.

21. On or about April 24, 2009, Sgt. Speigner complained to Sgt. Capps that Spraggins had been insubordinate, on the grounds that she allegedly had been rude to the MPD dispatcher. After an investigation, Sgt. Capps concluded that Sgt. Speigner's charge was baseless and recommended that the matter be dropped.

22. In the days following her discussion with Sgt. Capps, Spraggins also informed both Chief Johnson and Lt. Ron Fields ("Lt. Fields") of her issues with Sgt. Speigner, stating that she did not want to get him in trouble but just wanted to be left alone to do her job. When Spraggins explained the situation to Lt. Fields, he replied, "Well, it all makes sense now" or words to that effect.

23. During the course of the next few months, Chief Johnson and Lt. Fields assured Spraggins numerous times that they would "take care of her" and that "everything would be okay" regarding Sgt. Speigner. However, neither of them took any action regarding Sgt. Speigner and Sgt. Speigner's retaliatory harassment of Spraggins continued.

24. On or about July 8, 2009, Spraggins received a written reprimand from Lt. Fields and Lt. Capps for an allegedly improperly-prepared arrest packet. This was the first such reprimand Spraggins had ever received. Other officers who had similar paperwork errors were not reprimanded.

25. Later that evening, Spraggins had an "off the record" discussion with Sgt. Capps in which she stated that she was tired of being picked on. Sgt. Capps told Spraggins that there were people in the department who didn't like her and were out to get her. Spraggins replied that the department had more important things to worry about, such as sexual harassment issues.

26. On July 9, 2009, Spraggins was summoned to a meeting with Chief Johnson, Assistant Chief Johnny Montgomery, Lt. Pugh and Sgt. Capps. During the meeting, Chief Johnson showed Spraggins an anonymous letter sent to Millbrook Mayor Al Kelly ("Mayor Kelly") in late June. The letter contained numerous accusations of corruption and abuse within the Millbrook city government, including Sgt. Speigner's alleged sexual harassment of Spraggins and the MPD's failure to take any responsive action.

27. During the July 9 meeting, Chief Johnson instructed Spraggins either to submit a written request for a formal investigation of Sgt. Speigner or else to drop the matter entirely. Chief Johnson also told Spraggins that if she did request such an investigation, Chief Johnson would retaliate against Jason Gray, who was then employed with the Montgomery Police Department, by getting him fired. Chief Johnson stated that he believed Jason Gray to be the author of the anonymous letter.

28. On July 10, 2009, Spraggins received her annual employment evaluation. In the evaluation, she received good or excellent marks in 17 out of 20 categories. The evaluation also stated that "Ofc. Spraggins is a good officer and works hard at her job. Ofc. Spraggins is very good at working traffic and detecting narcotics," and recommended another two-step raise. The evaluation was signed both by Spraggins' supervisor, Lt. Don Pugh ("Lt. Pugh") and by Chief Johnson.

29. Spraggins retained counsel and submitted a written request for a formal investigation of Sgt. Speigner to Chief Johnson on or about July 15, 2009. At the same time, she informed Chief Johnson that she was also filing a charge with the EEOC.

30. On or about July 19, 2009, Spraggins filed her charge with the EEOC. Chief Johnson received written notice of Spraggins' EEOC charge by notice dated July 28, 2009.

31. When news of Spraggins' complaints became known within the MPD, the atmosphere immediately became polarized and extremely hostile. Many officers refused to speak with Spraggins, and those employees who were seen to remain friendly with her were criticized and ostracized by Chief Johnson and his allies. During the course of the remainder of her employment, Spraggins even become fearful for her life, as other officers would, for example, refuse to back her up on field calls.

32. On July 29, 2009, one day after the MPD received formal notice of her EEOC charge, Spraggins was given a written reprimand and a three day suspension by Sgt. Capps and Lt. Fields on the grounds that she had allegedly conducted an improper pat-down of an opposite-sex subject and otherwise been disrespectful during a traffic stop that occurred on July 22. Spraggins had never before been disciplined in such manner by the MPD for her handling of traffic stops which included pat-downs of opposite-sex subjects.

33. Spraggins disputed the basis for the reprimand and appealed this suspension to Chief Johnson. Chief Johnson upheld Spraggins' reprimand and suspension and added insubordination to the list of offenses. Spraggins further appealed the suspension to a grievance review board and the full Millbrook City Council, both of which upheld it.

34. After Spraggins submitted her request for an internal investigation of Sgt. Speigner and filed her EEOC complaint, senior officers in the MPD such as Chief Johnson,

Deputy Chief Montgomery and Lt. Fields began to criticize her work severely, often requiring her to spend long periods in "counseling" sessions. Spraggins had not been subject to such treatment prior to making her complaint against Sgt. Speigner.

35. On or about August 13, 2009, Chief Johnson contacted the Office of the District Attorney for Elmore, Autauga and Chilton Counties (the "Chilton District Attorney's Office") and requested an investigation of Spraggins' complaint about Sgt. Speigner. The resulting investigation consisted solely of polygraph tests administered to Spraggins and Sgt. Speigner by that office.

36. Based on the results of these tests, the Chilton District Attorney's Office informed Chief Johnson by letter dated August 26, 2009 of its conclusion that Spraggins' complaint was merited. Chief Johnson informed Mayor Kelly of the investigatory results in a memorandum dated August 29, 2009. In the memorandum, Chief Johnson emphasized that the investigatory conclusions were based solely on the polygraph results and asserted that there were no witnesses, photographs or other evidence to support the allegations.

37. Neither Chief Johnson nor any other supervisor took any disciplinary action against Sgt. Speigner as a result of the investigation.

38. In a memorandum dated September 8, 2009, Chief Johnson recommended to Mayor Kelly that Spraggins' employment with the MPD be terminated. As justification for this recommendation, Chief Johnson cited a number of issues, including:

(a) the three day suspension Spraggins received for the alleged improper pat down of an opposite-sex suspect at a traffic stop;

(b) more general citizen complaints about Spraggins' attitude and demeanor;

(c) Spraggins' alleged failure to conform with MPD policy regarding the correct use of in-car audio and video systems;

(d) internal complaints from other MPD members who had no desire to work with Spraggins because of her attitude; and

(e) the "recent discovery" that Spraggins allegedly had provided false information concerning an accident in which she had been involved at the City's gas pumps on April 14, 2009 that had led to the filing by the City of a worker's compensation claim on Spraggins' behalf that Chief Johnson now claimed, "amounted to outright fraud on Spraggins' part."

39. These justifications for Spraggins' termination were pretextual. Neither male officers nor officers who had not raised complaints of harassment were reprimanded or disciplined, much less terminated, for conduct similar to that described in Chief Johnson's September 8 memorandum.

40. Additionally, despite Spraggins' request, Chief Johnson refused to identify any other members of the MPD who refused to work with her.

41. Upon information and belief, evidence relied upon by Chief Johnson regarding Spraggins' alleged false workers' compensation claim was gathered after Spraggins filed her internal complaint and EEOC charge and is unreliable.

42. By letter dated September 11, 2009, Mayor Kelly informed Spraggins of Chief Johnson's charges and recommendation. Mayor Kelly also informed Spraggins she was entitled to a pre-disciplinary hearing before the Millbrook City Council and that she could appear with an attorney in order to answer the charges.

43. Spraggins invoked this right, appearing with counsel before the City Council on September 24, 2009. However, neither Spraggins nor her counsel was allowed to challenge the evidence presented against her by the City Attorney, or to call or cross-examine any witnesses. The City Council, after closed-door deliberation, voted to uphold Spraggins' termination.

44. Upon information and belief, witnesses who testified in support of Spraggins' termination were told by the MPD what they should say in their testimony before the Millbrook City Council.

45. The City of Millbrook, through the senior management of its Police Department, was on notice of Spraggins' allegation that Sgt. Speigner had engaged in sexual harassment and retaliation against her. However, neither the City nor the MPD took any meaningful steps to correct or discipline Speigner. Instead, when Spraggins' complaints became publicly known, the City of Millbrook further retaliated against her by terminating her from her employment. The City of Millbrook also subjected Spraggins to disparate treatment because she was terminated for reasons for which no male police officer was terminated.

46. The City of Millbrook has discriminated against Spraggins on the basis of her sex, in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), among other ways, by:

   (a) subjecting Spraggins to harassment based on her sex that adversely affected the terms, conditions and privileges of her employment with the City;

   (b) terminating Spraggins' employment on or about September 24, 2009; and

   (c) failing or refusing to take appropriate action to remedy the effects of the discriminatory treatment.

47. The City of Millbrook has retaliated against Spraggins in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), among other ways, by:

(a) subjecting Spraggins to harassment in retaliation for her rejection of Speigner's sexual advances that adversely affected the terms, conditions and privileges of her employment with the City;

(b) discharging Spraggins for opposing conduct that she reasonably believed to be unlawful under Title VII; and

(c) failing or refusing to take appropriate action to remedy the effects of the discriminatory treatment.

WHEREFORE, the United States prays that the Court grant the following relief:

(a) enjoin the City of Millbrook from failing or refusing to provide sufficient remedial relief to Spraggins to make her whole for the losses she has suffered as a result of the discrimination against her as alleged in this Complaint;

(b) enjoin the City of Millbrook from retaliating against employees who protest what they reasonably believe to be unlawful discrimination under Title VII;

(c) award compensatory damages to Spraggins to fully compensate her for the injuries caused by the City of Millbrook's discriminatory conduct, pursuant to and within the statutory limitations of Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a; and

(d) award such additional relief as justice may require, together with the United States' costs and disbursements in this action.

## JURY DEMAND

The United States hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

THOMAS E. PEREZ

Assistant Attorney General
Civil Rights Division

*[signature]*

DELORA L. KENNEBREW
(GA Bar No. 414320)
Chief
Employment Litigation Section
Civil Rights Division

*[signature]*

MEREDITH BURELL (MD Bar, No Number)
Deputy Chief
Employment Litigation Section
Civil Rights Division

*[signature]*

ROBERT L. GALBREATH (DC Bar No. 460389)
Senior Trial Attorney
United States Department of Justice
Employment Litigation Section, PHB 4028
Civil Rights Division
950 Constitution Avenue, NW
Washington, DC 20530
(202) 353-9731
(202) 353-8961 (fax)
Robert.Galbreath@usdoj.gov

GEORGE L. BECK, JR.

United States Attorney
Middle District of Alabama

*[signature]*

JAMES J. DUBOIS
(GA Bar No. 231445)
Acting Civil Chief
Assistant United States Attorney
P.O. Box 197
Montgomery, AL 36101-0197
(334) 223-7280
(334) 223-7418
James.DuBois2@usdoj.gov